**DATAMATIC SERVICES, INCORPORATED, Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 87–2818.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 12, 1990.

Decided Aug. 9, 1990.

Lane M. Gensburg, David A. McGuire, Michael L. Siegel, Stone, McGuire & Benjamin, Chicago, Ill., for plaintiff-appellant.

Michael L. Paup, William S. Rose, Jr., Asst. Atty. Gen., Robert S. Pomerance, Howard M. Soloman, Dept. of Justice, Tax Div., Appellate Section, Washington, D.C., for defendant-appellee.

Before COFFEY, EASTERBROOK, and MANION, Circuit Judges.

MANION, Circuit Judge.

The Internal Revenue Service assessed a $391,500 penalty against Datamatic Services, Inc. (Datamatic). Datamatic filed an administrative claim for refund, which was denied. Datamatic then filed this action for refund in federal court. A jury returned a verdict against Datamatic, imposing a penalty of $400,000. The district judge reduced the penalty to $391,500, the original amount. Datamatic appeals, and we affirm.

I.

In April 1982, Datamatic agreed to buy for $1,200 (plus other costs for related services) from the Jones Medical Instrument Company (Jones Medical) machines called Tiffenaires, which are used by physicians to test the condition of a patient's lungs.

Datamatic then offered the machines for sale to investors at $35,000 each. It drafted and distributed booklets to promote the sale, indicating that an investor could earn substantial income by buying the machine and then leasing it to a physician. The booklets also indicated that an investor could recover several times his cash investment through income tax benefits, in the form of investment tax credits, depreciation, and other deductions.

Datamatic sold 250 of the machines at a price of $35,000 each. Typically, an investor made a cash down payment and signed a short-term note to Datamatic, which together accounted for $6,250. A five-year note evidenced the remaining $28,750. Minimum annual installments of $2,600 (approximating the annual interest) were to be paid out of the investor's net leasing receipts. Each purchaser was to pay Datamatic an additional one-time service fee of $1,750.

Section 6700 of the Internal Revenue Code [1] prohibits the promotion of certain abusive tax shelters. A person who "organizes" or "participates in the sale of any interest in" any "plan or arrangement" and who a) makes a fraudulent statement concerning the tax benefits available under the plan, or b) makes "a gross valuation overstatement" concerning the property or services offered to investors under the plan, is liable for a penalty "equal to $1000 or 10 percent of the gross income derived or to be derived ... from such activity." The statute defines a "gross valuation overstatement" to include "any statement as to the value of any property or services [when the stated value] exceeds 200 percent of the amount determined to be the correct valuation...."

The Commissioner determined Datamatic had made gross valuation overstatements in the course of selling Tiffenaires to investors. Pursuant to § 6700, the Commissioner assessed $391,500 and mailed a notice of the assessment to Datamatic. Datamatic paid 15% of the assessment ($58,725) as required by § 6703(c)(1) and filed an administrative claim for refund. The claim was denied. Datamatic commenced a refund suit in federal district court and moved for summary judgment, which the court denied. The jury imposed a penalty of $400,000 against Datamatic.

Datamatic filed motions for a new trial (stating nine grounds) and to amend the judgment. The motion to amend the judg-

---

1. At the time of the alleged violations, 26 U.S.C. § 6700 provided:

SEC. 6700. PROMOTING ABUSIVE TAX SHELTERS, ETC.

(a) IMPOSITION OF PENALTY.—Any person who—

(1)(A) organizes (or assists in the organization of)—

(i) a partnership or other entity,

(ii) any investment plan or arrangement, or

(iii) any other plan or arrangement, or

(B) participates in the sale of any interest in an entity or plan or arrangement referred to in subparagraph (A), and

(2) makes or furnishes (in connection with such organization or sale)—

(A) a statement with respect to the allowability of any deduction or credit, the excludability of any income, or the securing of any other tax benefit by reason of holding an interest in the entity or participating in the plan or arrangement which the person knows or has reason to know is false or fraudulent as to any material matter, or

(B) a gross valuation overstatement as to any material matter,

shall pay a penalty equal to the greater of 1,000 or 10 percent of the gross income de-

rived or to be derived by such person from such activity.

(b) RULES RELATING TO PENALTY FOR GROSS VALUATION OVERSTATEMENTS.—

(1) GROSS VALUATION OVERSTATEMENT DEFINED.—For purposes of this section, the term "gross valuation overstatement" means any statement as to the value of any property or services if—

(A) the value so stated exceeds 200 percent of the amount determined to be the correct valuation, and

(B) the value of such property or services is directly related to the amount of any deduction or credit allowable under chapter 1 to any participant.

(2) AUTHORITY TO WAIVE.—The Secretary may waive all or any part of the penalty provided by subsection (a) with respect to any gross valuation overstatement on a showing that there was a reasonable basis for the valuation and that such valuation was made in good faith.

(c) PENALTY IN ADDITION TO OTHER PENALTIES.—The penalty imposed by this section shall be in addition to any other penalty provided by law.

ment asked that the judgment be reduced from $400,000 to $375,000. The government conceded that the judgment should be reduced to $391,500, the amount of the assessment, but opposed any further reduction. The district court denied the motion for a new trial and granted in part the motion to amend, limiting the amount of the judgment to $391,500. Datamatic appeals.

### II.

On appeal, Datamatic first challenges the district court's admission into evidence of a letter from Clinton Bell. Bell was in charge of Crossroads Management (Crossroads), which provided information to leased medical equipment investors. Bell testified that one of Crossroads' functions was to provide investors with quarterly reports. At trial, Bell was shown a six-page letter dated December 28, 1983, he had written to Tiffenaire owners. Bell stated that the letter was not a quarterly report, but rather was an "additional report." The letter alleged that Datamatic's placement charges were significantly greater than industry standards; that information was being withheld from Tiffenaire owners; that less than 10% of Tiffenaire owners advised by Crossroads earned a regular monthly income sufficient to pay interest on the note; that the lease renewal fee was excessive; and that the Tiffenaires did not function correctly. The letter also encouraged Tiffenaire owners to default on their obligations to Datamatic.

The district court admitted the Bell letter as a business record over Datamatic's hearsay objection. Datamatic actually objected to the admission of the letter as containing double hearsay, but does not advance this argument on appeal. Neither does Datamatic argue that the letter should not be admitted as opinion evidence. Datamatic does argue that the prejudice generated by the letter outweighs any probative value, but waived this argument by not raising it at the district court level. *Johnson v. Artim Transportation System*, 826 F.2d 538, 547 (7th Cir.1987), *cert. denied*, 486 U.S. 1023, 108 S.Ct. 1998, 100 L.Ed.2d 229

(1988). (Datamatic claimed the letter was "defamatory," but did not contend prejudice outweighed probative value such as to exclude the letter under Rule 403 of the Rules of Evidence.) On appeal, Datamatic's only preserved objection to the letter's admission is that it does not properly fall within the business record exception.

■ Rule 803(6) of the Federal Rules of Evidence excepts from the general hearsay rule:

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

The rule may be parsed into three elements: 1) the document must be prepared in the normal course of business; 2) it must be made at or near the time of the events it records; and 3) it must be based on the personal knowledge of the entrant or on the personal knowledge of an informant having a business duty to transmit the information to the entrant. See generally *McCormick on Evidence*, § 306 et seq. (3d ed. 1984). "The admissibility of business records is entrusted to the broad discretion of the trial court, and the court's ruling will not be disturbed absent an abuse of that discretion." *United States v. Zapata*, 871 F.2d 616, 625 (7th Cir.1989) (quoting *United States v. Peters*, 791 F.2d 1270, 1292 (7th Cir.), *cert. denied*, 479 U.S. 847, 107 S.Ct. 168, 93 L.Ed.2d 106 (1986)). Datamatic argues Bell's letter met none of the above three criteria.

■ Although the Bell letter appears to satisfy the first two elements of the business records exception, the third requirement—that the information in the record be based on the entrant's personal knowledge—presents a problem. Bell may have been acting within the regular course of his business in preparing the letter; however, the sources he used were outsiders (albeit clients) with respect to the business. "[I]f the source of the information is an outsider, Rule 803(6) does not, by itself, permit the admission of the business record. The outsider's statement must fall within another hearsay exception...." *United States v. Baker*, 693 F.2d 183, 188 (D.C.Cir.1982). *See also Grogg v. Missouri Pacific Railroad Co.*, 841 F.2d 210, 213–14 (8th Cir.1988).[2] The issue, then, is whether the questionnaire answers used to prepare the letter satisfied any other hearsay exception. The government does not argue that it did, and we will not speculate further on that point since we find any error to be harmless.

Errors in the admission of evidence "will be deemed to be harmless unless they had a 'substantial and injurious effect or influence on the jury's verdict.'" *Harris v. Davis*, 874 F.2d 461, 465 (7th Cir.1989) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)), *cert. denied*, —— U.S. ——, 110 S.Ct. 735, 107 L.Ed.2d 754 (1990). Datamatic admits the Bell letter was of little probative value on the question of market value. The alleged prejudice resulted from the letter's accusations that Datamatic had overcharged for placement and lease renewals, and other unflattering statements of opinion unrelated to the elements of the government's case. However, evidence of a party's "bad acts" (whether true or untrue) is harmless—even in a criminal trial— if the government clearly proves all the elements of its case. *United States v.*

*Gometz*, 879 F.2d 256, 260 (7th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 752, 107 L.Ed.2d 768 (1990).

Datamatic identifies the principal factual issues at trial as "whether Datamatic made or furnished a gross valuation overstatement as defined in [§ 6700]," and "if so, what the correct amount of the penalty should be." Appellant's Brief at 8–9. The government, instead of following the more strict market or income approaches for valuation, accepted the cost approach. By generously allowing a $6,000 cost (as opposed to the actual cost of $1,200) and a purchase price of $21,000 (instead of the $35,000 listed price), the government narrowed the spread used to calculate valuation considerably (in Datamatic's favor). That spread still far exceeded the 200% statutory limit. Because we find the government clearly proved all the elements of its case, the admission of the Bell letter was harmless error.

■ Datamatic next argues the trial court erred by allowing the government to call George Wedemeyer as a rebuttal witness. Wedemeyer had purchased two Tiffenaires as an investment. The government called Wedemeyer to rebut testimony by Gabrielle Gang, who had indicated that it was easy and lucrative to lease a Tiffenaire machine to a physician on a fee-for-usage basis. Wedemeyer testified the Tiffenaires he acquired never generated any income and were never placed. Datamatic contends Wedemeyer's testimony should have been in the government's case in chief and was not a proper subject for rebuttal. However, the trial court has broad discretion to decide what constitutes proper rebuttal evidence. *Spesco v. General Electric Co.*, 719 F.2d 233, 239–40 (7th Cir. 1983). "[The cases] show the discretion that a district judge has in ordering the evidence, and do not, therefore, require the

**2.** In *United States v. Zapata, supra*, the district court admitted into evidence guest registration records of a hotel which included information filled in by guests, who obviously were not employed by the hotel. The Seventh Circuit affirmed: "In applying the business records exception of the hearsay rule to hotel guest registrations, the inquiry is not controlled by the

status of the recording person as a hotel employee or a guest." 871 F.2d at 625. The records were admissible because the hotel verified the information provided. The government argues the Bell letter is admissible under *Zapata*. However, there was no independent verification of the clients' questionnaire answers in this case. Therefore *Zapata* is distinguishable.

government to put certain evidence in its case in chief absent an order from the trial judge." *United States v. Braxton*, 877 F.2d 556, 561 (7th Cir.1989). Datamatic does not explain how Wedemeyer's testimony would have been less damaging if presented in the government's case in chief. Datamatic only argues that, because the government did not present the testimony in its case in chief, it should not have been allowed to present the evidence on rebuttal. *Braxton* provides clear authority to the contrary.

■ Datamatic next argues the jury's award was contrary to the evidence and excessive. The jury awarded a $400,000 penalty against Datamatic. Datamatic moved to reduce the award to $375,000. The district court reduced the award to the original penalty of $391,500.

Datamatic filed a motion for new trial listing nine grounds. The third ground stated: "The verdict was contrary to the weight of the evidence"; the fourth ground: "The verdict was excessive"; the fifth ground: "The verdict was the result of substantial confusion by the jury concerning the computation of the penalty." This was Datamatic's entire argument to the district court as to why a new trial should be granted for the determination of the penalty. Conversely, Datamatic devotes seven pages of its appellate brief and six pages of its reply brief attacking the jury's penalty. Furthermore, Datamatic moved to amend the judgment at the same time it moved for a new trial, asking only for a reduction of the penalty to $375,000. Datamatic now contends, for the first time, that the evidence supports a penalty of no more than $89,529.63.

The decision whether to grant or deny new trial on the ground that the verdict is against the weight of the evidence "is confided almost entirely to the discretion of the trial judge." *First National Bank of Kenosha v. United States*, 763 F.2d 891, 896 (7th Cir.1985). Obviously the district court cannot abuse its discretion when arguments were never presented to it. In *Moseley, Hallgarten, Estabrook and Weeden, Inc. v. Ellis*, 849 F.2d 264 (7th Cir.

1988), we rejected a request to vacate or modify an arbitration award:

> [W]e reject the appellants' final challenge to the order confirming the arbitration award because Ellis' argument to the district court sought only to modify the amount of the award and limit his liability to $16,000 rather than the $32,-000 awarded by the arbitrators. When presenting his case to the district court, Ellis did not argue that the award be vacated because the partnership debt was satisfied in full as a result of Rossini's promissory note. Rather, as noted, Ellis simply requested the award be modified to reflect that his liability was limited to $16,000. "On numerous occasions we have held that 'if a party fails to press an argument before the district court, he waives the right to present that argument on appeal.'" ... "As we have made clear, 'it is axiomatic that arguments not raised below are waived on appeal.'" ... Since our review of the record confirms Ellis' failure to argue to the district court that the award be vacated because the debt was fully satisfied, we hold that Ellis "is barred from pursuing this argument on appeal."

*Id.* at 271 (citations omitted). Similarly, we find that Datamatic's failure to support its motion for a new trial with any of the arguments found in the appellate briefs waives those arguments on appeal.

■ Datamatic next argues that the retroactive application of § 6700 to it is statutorily and constitutionally impermissible. The government argues Datamatic waived this issue by not raising it at the trial level. Datamatic responds that its argument is merely "a legal embellishment of Datamatic's initial good faith defense. The embellishment was the application of the legal concept of retroactivity to the basic facts brought out at trial underlying the good faith defense. On appeal, Datamatic has merely expanded the scope of the good faith defense it previously raised." Appellant's Reply Brief at 15. Datamatic encapsulated its good faith argument in its proposed jury instruction which the district court rejected: "You are instructed that, under Section 6700, you must find in favor of the plaintiff if you determine from the

evidence that there was a reasonable basis for the valuation and that such valuation was made in good faith." Datamatic now contends this good faith argument encompassed the current "embellished" constitutional and statutory argument against § 6700's retroactive application. However, the two arguments are clearly distinct. Because Datamatic did not raise the issue of retroactivity below, that issue has been waived. *Johnson, supra*, 826 F.2d at 547.

In its final two issues on appeal, Datamatic contends the government has violated the due process clause by providing insufficient information necessary to prepare a meaningful claim for refund in its notice of penalty and because § 6703(c)(1) is impermissibly vague and ambiguous with respect to the steps a taxpayer must take to file a claim for refund. However, Datamatic does not state how either of these alleged constitutional deficiencies has harmed it. Datamatic has in fact filed a claim for refund in federal district court, has taken the case to trial, and has exercised its right to appellate review. Any deficiency in the notice or vagueness in the statute has not prevented Datamatic from proceeding this far. Since Datamatic has shown no prejudice, it has no standing to assert these issues.

The decision of the district court is AFFIRMED.