27 F.3d 569
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Joseph L. SOMMERS, Plaintiff/Appellant,
v.
SAUK COUNTY, Eugene Dumas, and Norman Brickl, Defendants/Appellees.
 No. 92-3029.
 United States Court of Appeals, Seventh Circuit.
 Submitted June 30, 1994.*
Decided July 5, 1994.
 
 Before CUMMINGS, BAUER and FLAUM, Circuit Judges.
 
 ORDER
 
 1
 Joseph Sommers, formerly an employee of the Sauk County, Wisconsin Department of Human Services, brought an action under 42 U.S.C. Sec. 1983, against Sauk County and two of its officials: Norman Brickl, the Director of the Department of Human Services, and Eugene Dumas, Sauk County Corporation Counsel. Sommers claimed that the defendants violated his First Amendment right to free speech by retaliating against him for criticizing the department; that they violated his due process rights by conducting a meeting of the Sauk County Personnel Committee at which Brickl was permitted to speak outside the presence of Sommers and his union representative; and that Brickl and Dumas defamed him. The district court granted the defendants summary judgment. Sommers appeals the judgment with respect to the First Amendment claim and the defamation claim.
 
 
 2
 The background of this case is set forth in Judge Crabb's thorough opinion, see Sommers v. Sauk County, et. al, No. 91-C-0603-C (W.D.Wis. June 17, 1992), so it need not be recounted here. We repeat only those facts which are germane to the issues raised by Sommers on appeal. Sommers' First Amendment claim is that the defendants violated his right to free exercise of speech by retaliating against him when he complained about certain policies of the Sauk County Department of Human Services and about the actions of some of its employees. This alleged retaliation took the form of a requirement that Sommers submit to a psychological and neuropsychological evaluation as a condition of continued employment.
 
 
 3
 The grant of summary judgment is reviewed de novo. Schulz v. Serfilco, Ltd., 965 F.2d 516, 518-19 (7th Cir.1992). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions, and affidavits on file show that there is no genuine issue of material fact for a trial. Fed.R.Civ.P. 56(c). To succeed on his First Amendment claim, Sommers must establish that: (1) his criticism of the Department and its employees was a motivating factor in the defendants' imposition of the requirement of a psychological and neuropsychological evaluation, Mount Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); (2) his criticism of the Department and its employees were matters of public concern; and (3) his right to comment on matters of public concern outweighed the interest of Sauk County, as an employer, in promoting the efficiency of the public services it performs. See Waters v. Churchill, 62 U.S.L.W. 4397, 4399 (U.S. May 31, 1994) (No. 92-1450); Connick v. Meyers, 461 U.S. 138, 142 (1983); Pickering v. Board of Educ., 391 U.S. 563, 568 (1968).
 
 
 4
 The defendants concede that Sommers' critical comments were matters of public concern; and we can assume, for purposes of this appeal, that Sommers' critical comments were a motivating factor in the defendants' imposition of a psychological and neuropsychological evaluation as a condition of continued employment. This appeal turns on the third element. Undisputed evidence establishes that the interest of Sauk County in promoting the efficiency of the public services it performs outweighed Sommers' right to criticize the Sauk County Department of Human Services and its employees.
 
 
 5
 The extent of Sauk County's efficiency interest is determined on the basis of several important considerations: (1) the need to maintain discipline or harmony among co-workers; (2) the need for confidentiality; (3) the need to curtail conduct which impedes an employee's proper and competent performance of his daily duties; and (4) the need to encourage a close and personal relationship between an employee and his superiors, where that relationship calls for loyalty and confidence. Pickering, 391 U.S. at 570-73; Breuer v. Hart, 909 F.2d 1034, 1037 (7th Cir.1990). The fourth consideration is the most important: "When close working relationships are essential to fulfilling public responsibilities, a wide degree of deference to the employer's judgment is appropriate." Connick v. Myers, 461 U.S. 138, 151-52 (1983). "The public employer is not required to wait until those working relationships actually disintegrate if immediate action might prevent such disintegration." Id. The initial, and often determinative, question is whether the speech interfered with the employee's work or with the efficient and successful operation of the office. Churchill, 62 U.S.L.W. at 4401; Knapp v. Whitaker, 757 F.2d 827, 842 (7th Cir.), cert. denied, 474 U.S. 803 (1985).
 
 
 6
 The Department of Human Services used a team concept to address the needs of the chronically mentally ill. A team concept is dependent upon team members who recognize the value of the team and contribute to it. Sommers avoided team evaluation meetings with staff members and the staff psychiatrist. He had an abrupt, overpowering, interactive style. He had frequent disagreements with his supervisor. As his employment progressed, Sommers became more and more isolated from his co-workers. He disregarded the opinions of other staff members and viewed the staff psychiatrist and psychologists as persons with no concern for the clients. He believed that the team concept was a charade that required him to betray his clients, that he had to be a "backscratching time-server" to be accepted by his supervisors, that several of his co-workers engaged in back-biting, and that the staff psychiatrist was cynical and arrogant.
 
 
 7
 Sommers' speaking out at work, sometimes in a confrontational manner, undermined the Department's need to maintain discipline or harmony among co-workers. Sommers' co-workers developed a wary and suspicious attitude toward Sommers. Sommers was involved in a confrontation in a parking lot with a co-worker who felt threatened by Sommers. Co-workers frequently complained to supervisors that Sommers ignored staff recommendations.
 
 
 8
 Sommers' criticisms and opinions about the Department and co-workers interfered with his ability to do his job. Because of his opinion that other team members were just collecting paychecks rather than looking out for the best interests of clients, Sommers chose not to participate in team meetings or to discuss fully with team members matters concerning his own clients. The refusal or inability to communicate with team members led to at least three situations that affected clients directly: in one instance, a client was hospitalized more frequently; in another, a client was involved in a serious physical altercation resulting in hospitalization; in a third, a client who was not to be left alone was put into a vulnerable situation because Sommers left him in the care of someone with other responsibilities.
 
 
 9
 In arguing that summary judgment was improperly granted, Sommers identifies minor inconsistencies in the deposition testimony of his co-workers and Brickl rather than identifying material facts that remain in dispute. The inconsistencies that Sommers identifies mostly involve discrepancies in the exact dates upon which particular incidents occurred. These inconsistencies are not sufficient to preclude summary judgment. Sommers points out that there was an element of truth to some of his criticisms as evidenced by an investigation of the Department that was conducted by a local newspaper after he resigned, and that his formal work evaluation lauded his case management and clinical skills. Neither a positive work evaluation nor a newspaper's corroboration of some of Sommers' criticisms is sufficient to undermine the undisputed evidence that Sommers' criticisms and opinions hindered his ability to do his job and interfered with the efficient and successful operation of the office.
 
 
 10
 Sommers also asserts that requiring him to submit to a psychological and neuropsychological evaluation was an extraordinary step. He argues that the fact that this requirement was extraordinary is strong evidence that the defendants wanted to stifle his legitimate concerns. We disagree. Had the County wanted to silence Sommers, it could have fired him rather than seeking medical evidence concerning his fitness for work.
 
 
 11
 Finally, Sommers argues that the district court improperly granted the defendants summary judgment on his claim that Brickl and Dumas defamed him. This is a pendent state-law claim, over which the district court had supplemental jurisdiction. See 28 U.S.C. Sec. 1367(a). A district court "may decline" to exercise supplemental jurisdiction over a pendent state-law claim if all federal-law claims drop out before trial. Id. Sec. 1367(c). The rule of United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966), is that, in such a case, the district court should relinquish its pendent jurisdiction. The district court here did not do this, but instead, after resolving the federal claims against Sommers, resolved the defamation claim on the merits.
 
 
 12
 Nevertheless, there are exceptions to the Gibbs rule, of which the one applicable here is that if it is absolutely clear that the pendent state-law claim can be decided in only one way, the district court can and should decide it, to save the time of the state court. Brazinski v. Amoco Petroleum Additives Co., 6 F.3d 1176, 1182 (7th Cir.1993); Bowman v. City of Franklin, 980 F.2d 1104, 1109 (7th Cir.1992); Martin-Trigona v. Champion Fed. Sav. & Loan Ass'n, 892 F.2d 575, 578 (7th Cir.1989). Sommers alleged that Dumas and Brickl defamed him by referring to him as "crazy" and "unbalanced." Yet Sommers presented no evidence that Dumas and Brickl ever made such statements. The alleged sources of Sommers' information that Dumas and Brickl made the statements were Gerald Brillowski and Darlene Hill, who were members of the Sauk County Board of Supervisors, and Dorothy Coens, who was a member of the human services board for Sauk County. During their depositions, Coens, Hill, and Brillowski all denied hearing Dumas or Brickl refer to Sommers as "crazy" or "unbalanced." Granted, as Sommers points out, Coens testified that members of the human services committee were under the impression that he had mental problems. But Coens explained that this impression derived from the fact that Sommers had been asked to undergo the psychological and neuropsychological examination. She did not testify that Brickl or Dumas told the board members that Sommers had mental problems.
 
 
 13
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and the record